# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

     Plaintiff,

     v.                             Case No. 06-Cr-020

GEORGIA THOMPSON,

     Defendant.

## RECOMMENDATION TO CHIEF UNITED STATES DISTRICT JUDGE RUDOLPH T. RANDA

## NATURE OF THE CASE

On January 24, 2006, a federal grand jury sitting in this district returned a two-count indictment against defendant Georgia Thompson. The defendant is charged in Count One with knowingly and intentionally causing the misapplication of funds under the care, custody and control of the State of Wisconsin in violation of 18 U.S.C. §§ 2 and 666(a)(1)(A). Count Two charges the defendant with knowingly devising and participating in a scheme to defraud the State of Wisconsin of the right of honest services and causing a communication to be delivered by a private interstate carrier in violation of 18 U.S.C. §§ 2, 1341 and 1346.

On February 3, 2006, the defendant appeared before United States Magistrate Judge William E. Callahan for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant has filed the following motions: 1) motion to dismiss (Docket #7), 2) motion for a bill of particulars (Docket #15) and 3) motion to dismiss Count Two (Docket #16). The defendant filed a motion and memorandum in support of her motion to dismiss on February 3, 2006. (Docket #8). On February 28, 2006, the defendant

filed a motion to dismiss Count Two with a supporting memorandum. (Docket # 17). On the same date, she filed another brief in support of her motion to dismiss (Docket # 19) and a motion for a bill of particulars. The defendant's motions to dismiss will be addressed herein. The defendant's motion for a bill of particulars has been addressed in a separate decision.

The AFT-Wisconsin, Wisconsin Professional Employees Council, AFT-Wisconsin Local 4848, AFL-CIO; Wisconsin Physician & Dentist Association, Local 4893; Professional Employees in Research, Statistics & Analysis, Local 4999; Wisconsin Science Professionals, Local 3732, WFT, AFT, AFL-CIO and Wisconsin State Public Defenders Association, Local 4822, AFT, AFL-CIO filed a motion to file an amici curiae brief (Docket #20). The motion was denied on April 14, 2006.

## MOTION TO DISMISS THE INDICTMENT

The defendant moves the court to dismiss the indictment (Docket #7) because it allegedly fails to state an offense cognizable under the laws of the United States. The motion is made pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fifth, Ninth and Fourteenth Amendments to the United States Constitution. The defendant filed two memoranda in support of her motion to dismiss. In the first, the defendant asserts that the indictment is deficient and fails to allege a criminal offense for several reasons: 1) the actions alleged in the indictment do not constitute "misapplication" of funds; 2) there was no scheme to defraud of honest services; 4) there was no material false statement; and 4) there was no intent to defraud. (Defendant's First Memorandum Supporting Motion to Dismiss [Defendant's First Memorandum] at 12-13). In her second memorandum, the defendant reasserts that the indictment fails to allege a criminal offense and asserts that 18 U.S.C. § is unconstitutional as applied.

- 2 -

In response, the government asserts that both Counts One and Two of the indictment state an offense and that § 1346 is not unconstitutionally vague as applied to the defendant's conduct. The government maintains that the defendant's motion to dismiss should be denied.

The defendant is charged with mail fraud in Count Two of the indictment. Specifically, the defendant is charged with using the mails in furtherance of a scheme to deprive the State of Wisconsin of its right to the defendant's loyal and honest services. A brief review of the background of the right to "honest services" is helpful to a resolution of the issues before the court.

Beginning in the 1970s, courts began to hold that certain fiduciary relationships encompassed a right to "honest services" and that the mail fraud statute protected people from schemes to deprive them of such an intangible right, as well as from schemes to deprive them of their money or tangible property. Under the honest services doctrine, "[t]he violation results from the deception by the defendant, which breaches the defendant's fiduciary duty and triggers a personal gain to which the defendant is not otherwise entitled." Peter J. Henning, Federalism and the Federal Prosecution of State and Local Corruption, 2 Ky. L.J. 75, 140-41 (2003-04).

In 1987, however, the United States Supreme Court held in McNally v. United States, 483 U.S. 350, 360-61 (1987), that the mail fraud statute required proof that a scheme involved a deprivation of money or tangible property. As a result, shortly thereafter, Congress enacted a statute that explicitly extended the scope of the mail fraud statute to encompass schemes to deprive others of "the intangible right of honest services." 18 U.S.C. § 1346; See Cleveland v. United States, 531 U.S. 12, 19-20 (2000). Section 1346 does not, "with its unelaborated reference to 'a scheme or artifice to deprive another of the intangible right of honest services,'

- 3 -

create[ ] criminal liability for events that would not have been crimes before *McNally*." United States v. Bloom, 149 F.3d 649, 655 (7th Cir. 1998).

Count Two of the indictment alleges that, as a member of the state travel contract evaluation committee, the defendant owed a fiduciary duty to the State of Wisconsin and its citizens to evaluate the state travel contract proposals according to the criteria set forth in the Request for Proposals [RFP] for those contracts. (Indictment, ¶¶ 10-12). The indictment further alleges that the defendant breached that fiduciary duty in the course of the "Partner" contract evaluation process when she, for improper, political considerations apart from the merits criteria set forth in the RFP, 1) intentionally inflated the oral presentation score she gave Adelman Travel; 2) encouraged other committee members to change the scores they assigned bidders on the Partner contract; 3) inflated the score she gave a bidder on the oral portion of the Athletics contract as a basis for encouraging another committee member to increase her score for Adelman Travel on the partner contract; and 4) prevented the committee from unanimously recommending that the Partner contract be awarded to a bidder other than Adelman Travel. Id. ¶¶ 13.

Thus, the government asserts that "the indictment alleges that [the defendant] improperly elevated the interests of private parties above those of the public by breaching a fiduciary duty to evaluate the travel contract according to the criteria and procedures established by state law, regulations and the RFP – criteria and procedures designed to insulate the contract selection process from the very types of improper considerations that [the defendant] ultimately successfully injected into that process." (Government's Consolidated Response to Defendant's Pretrial Motions [Government's Response] at 9).

- 4 -

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment be a plain, concise, and definite written statement of the essential facts constituting the offense charged. The standard for reviewing objections to the sufficiency of an indictment was summarized in United States v. Johnson, 805 F.2d 753, 757-58 (7th Cir. 1986):

> The validity of an indictment is to be tested by a reading of the indictment as a whole. An indictment is sufficient if it, first, alleges the elements of the offense charged and fairly informs a defendant of the charge against him . . . [so that he can prepare a defense] and, second, enables the defendant to plead an acquittal or conviction in bar of future prosecutions. United States v. Watkins, 709 F.2d 475, 478 (7th Cir. 1983) (citations omitted).

See also, United States v. Palumbo, 145 F.3d 850, 860 (7th Cir. 1998); United States v. Glecier, 923 F.2d 496, 499 (7th Cir. 1991). As long as the words of the statute involved clearly set forth all of an offense's constituent elements, it is generally sufficient that an indictment be stated in the words of the statute itself. Hamling v. United States, 418 U.S. 87, 117-18 (1974); United States v. Raineri, 521 F.Supp. 16, 22 (W.D. Wis. 1980), aff'd, 670 F.2d 702 (7th Cir. 1982).

To state a mail fraud offense, an indictment must adequately set forth the following elements: (1) that the defendant participated in a scheme to defraud; (2) that the defendant acted with intent to defraud; and (3) that the defendant used the mail in furtherance of the fraudulent scheme. United States v. Fernandez, 282 F.3d 500, 506 (7th Cir. 2002).

Section 1346 defines "a scheme or artifice to defraud" to include not only a scheme that deprives the victim of money or property, but also "a scheme or artifice to deprive another of the intangible right to honest services." 18 U.S.C. § 1346. The court of appeals for this circuit has interpreted the statute such that "an employee deprives his employer of his honest services

Case 2:06-cr-00020-RTR   Filed 05/30/06   Page 5 of 16   Document 32

only if he misuses his position (or the information he obtained in it) for personal gain." Bloom, 149 F.3d at 656-7.

The defendant asserts that the indictment fails to allege private gain. However, the indictment alleges that the defendant sought to obtain political advantage for her supervisors and to enhance her personal job security. (Indictment, Count Two, ¶¶ 3, 4). Several district courts in this circuit have held that providing political advantage to another as a result of the misuse of one's public position, and thus gaining personal job security, can satisfy the requirement of personal gain. See United States v. Sorich, 2006 U.S. Dist. LEXIS 18227, 22-23 (N.D. Ill. 2006); U.S. v. Munson, 2004 U.S. Dist. LEXIS 14274, 2004 WL 1672880, *1 (N.D. Ill. 2004); United States v. Bauer, 2000 U.S. Dist. LEXIS 16784, 2000 WL 1720245, *4 (N.D. Ill. 2000). Although the defendant asserts that she is a civil service employee and, therefore, her job security is not an issue, the government correctly points out that whether her job security is an issue is a factual question that has no bearing in assessing the sufficiency of the indictment.

The government alternatively contends that although the indictment does not explicitly allege private financial gain to the defendant, her actions had economic consequences. The government asserts that for the purposes of alleging an honest services offense, the private gain need not flow directly to the defendant, citing United States v. Spano, 421 F.3d 599, 603 (7th Cir. 2005) and United States v. Warner, 2005 WL 2367769, 2005 U.S. Dist. LEXIS 21367, *6 (N.D. Ill. 2005).

In Spano, the court confirmed that "[a] participant in a scheme to defraud is guilty even if [she] is an altruist and all the benefits of the fraud accrue to other participants." 421 F.3d at 603 This is because, "[i]n the case of a successful scheme, the public is deprived of its

- 6 -

servants' honest services no matter who receives the proceeds." Id. Accordingly, in this circuit, "the government may establish a claim for honest services mail fraud without demonstrating that [the defendant herself] received any personal benefit." Warner, 2005 U.S. Dist. LEXIS 21367, *6-7. Here, the indictment alleges that as a result of the defendant's actions, the State of Wisconsin awarded Adelman Travel Group the Partner contract.

The defendant also asserts that materiality is an essential element of mail fraud and that the indictment fails to set "forth a basis to believe that [she] made any material misstatement or omission on her part, resulting in the State of Wisconsin being deprived of her honest services." (Defendant's Second Memorandum in Support of Motion to Dismiss [Defendant's Second Memorandum] at 24). The defendant asserts that the indictment alleges that she inflated her scores impermissibly affecting the evaluation process and that, under applicable law (and policy), scoring is subjective and left to the discretion of each evaluator. She cites Wis. Admin. Code, Adm § 10.09(4) as support for her assertion.[1] Thus, the defendant contends that there was nothing to "inflate" and, therefore, no material false statement resulted.

In Neder v. United States, the Supreme Court held that materiality is an essential element of a "scheme to defraud" under the mail fraud statute. 527 U.S. 1, 25 (1999); Fernandez, 282 F.3d at 508. A false statement is material "'if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it is addressed.'" Fernandez, 282 F.3d at 508 (quoting United States v. Gee, 226 F.3d 885, 891 [7th Cir. 2000]).

---

[1]The government points out that the defendant must have meant to cite to § 10.08(4) instead of § 10.09(4), as there is no § 10.09(4).

In this case, the indictment specifically alleges materiality by alleging "[t]he scheme to defraud included the false material pretenses and representations described above." (Indictment, Count Two, ¶ 2). Specifically, the indictment alleges (1) that the defendant rigged the bidding process; (2) that the defendant falsely inflated her scores for Adelman Travel Group and encouraged other committee members to do the same and (3) that the defendant's fraudulent scheme included materially false pretenses and representations designed to advantage her supervisors and to enhance her own job security.

The defendant asserts that the applicable statutes and code sections make clear that the evaluation committee cannot award a contract; rather, the state Department of Administration, or a properly delegated agent or agency, awards the contract. The defendant cites Wis. Stat. § 16.71(1) in support of her position. The defendant further asserts that the Department of Administration retains the authority to reject an evaluation committee's recommendation or to reject all proposals, citing Wis. Admin. Code, Adm §§ 7.09(5) and 10.08(7).

Wis. Admin. Code, Adm § 10.08(7) provides that the contract award "shall be based on the evaluation committee recommendation." Although § 10.08(7) does allow for a change in an award, it does so only on five bases none of which the defendant specifically asserts in this case. Additionally, Wis. Admin. Code, § Adm 10.08(4) provides that the committee shall "[r]eview all proposals submitted in response to an RFP, using as a basis the evaluation criteria included in the RFP." The indictment alleges that the defendant intentionally inflated her scores on the basis of criteria not set forth in the RFP and that she encouraged other committee members to do so also. (Indictment, ¶ 13). Accordingly, Count Two of the Indictment adequately alleges materiality.

- 8 -

The defendant also asserts that the indictment fails to allege intent to defraud. Specifically, the defendant asserts that:

> The Indictment alleges no reason for Georgia Thompson to know or suspect, nor does it state facts from which to infer she knew or suspected, that preferring the lowest proposal was fraudulent or deprived anyone of a state employee's honest services, when she did not unlawfully benefit personally from the subsequent award of the contract to [Adelman Travel Group].

(Defendant's Second Memorandum at 25). It appears as though the defendant is asserting that the statute, as applied, is unconstitutionally vague. However, whether the statute is unconstitutionally vague as applied does not bear upon whether the indictment sufficiently alleges intent to defraud.

The indictment sufficiently alleges intent by alleging that the defendant "did knowingly devise and participate in a scheme to defraud the State of Wisconsin of the right of honest services." (Indictment, Count Two, ¶ 1). The indictment alleges that the defendant misused her position by using political considerations to:

> (a)  intentionally inflate her scores for Adelman during the oral presentation portion of the Partner contract selection;
> (b)  state to other evaluators that she had intentionally inflated her scores for another travel agency during the oral presentation portion of the Athletics contract and to do so in order to use that score as a negotiating tool in favor of Adelman in dealings with other members of the committee on the Partner contract;
> (c)  prevent the otherwise unanimous determination of the other committee members that the Partner contract be awarded to a recipient other than Adelman; and
> (d)  suggest committee members change the scores evaluating the Partner contract.

(Indictment, ¶ 13). The indictment further alleges that in doing so, the defendant intended her actions to lead to political advantage for her supervisors and to job security for herself. Id., Count Two, ¶¶ 3, 4.

- 9 -

In support of her argument that the indictment fails to allege intent to defraud, the defendant cites two cases, United States v. Genova, 333 F.3d 750, 759 (7th Cir. 2003) and United States v. Czubinski, 106 F.3d 1069, 1077 (1st Cir. 1997). Neither of those cases, however, specify what must be alleged in order to adequately allege intent to defraud.

In Czubinski, the Court of Appeals for the First Circuit reversed the conviction of an employee of the Internal Revenue Service (IRS) who had carried out numerous unauthorized searches of one of the IRS's computer systems. 106 F.3d at 1071. Although the defendant accessed confidential taxpayer information as a result of the unauthorized searches, he did not otherwise use or profit from the confidential data. Id. at 1071-72. Thus, the court concluded that the defendant's conviction for honest services mail fraud had to be reversed because the government failed to prove that he "deprived or intended to deprive, the public or his employer of their right to his honest services." Id. at 1077. Specifically, the court noted that although the defendant committed wrongdoing in accessing the confidential information, there was no suggestion that the defendant had failed to carry out his official tasks adequately, or that he intended to do so. Id.

In this case, however, the indictment alleges that the defendant knowingly devised and participated in a scheme to defraud the State of Wisconsin of the right of honest services by her actions as listed in paragraph 13 of the indictment. The indictment adequately alleges intent to defraud.

The defendant's final argument with respect to Count Two is that 18 U.S.C. § 1346 is unconstitutional as applied. The defendant asserts that she did not have fair notice that her conduct constituted a crime. The defendant cites United States v. Handakas, 286 F.3d 92, 104 (2nd Cir. 2002), in support of her argument that 18 U.S.C. § 1346 has been successfully

- 10 -

challenged as applied. However, in United States v. Rybicki, 354 F.3d 124, 144 (2nd Cir. 2003), cert. denied, 543 U.S. 809 (2004), the Court of Appeals for the Second Circuit overruled "the unnecessary constitutional ruling" in Handakas. Moreover, the court of appeals for this circuit distinguished Handakas in United States v. Hausmann, 345 F.3d 952, 958 (7th Cir. 2003). The court concluded that "the existence of the defendant's fiduciary duty owed to his clients distinguishes this case from one where the government arbitrarily and impermissibly relies upon the mail and wire fraud statutes to enforce merely the terms of a private contract." Id.

The Supreme Court has explained that "[a]s generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357-58 (1983). The decision of the Court of Appeal for the Seventh Circuit in Bloom put the defendant on notice that "criminal liability under the mail and wire fraud statutes—particularly under an intangible-rights theory—attaches to the misuse of one's fiduciary position for personal gain. Hausmann, 345 F.3d at 959. The indictment in this case alleges that the defendant misused her fiduciary position for personal gain. Accordingly, at this juncture, 18 U.S.C. § 1346 is not unconstitutionally vague as applied.

Count One of the Indictment charges that the defendant knowingly and intentionally caused the misapplication of funds under the care, custody and control of the State of

- 11 -

Wisconsin in violation of Title 18, United States Code, §§ 2 and 666(a)(1)(A). (Indictment, Count One, ¶ 1). Section 666(a)(1)(A) provides:

> (a) Whoever, if the circumstance described in subsection (b)[2] of this section exists–
>> (1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
>>> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--
>>>> (I) is valued at $ 5,000 or more, and
>>>> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency;

To establish misapplication of federal program funds, the government must prove: (1) the defendant was an agent of a state government; (2) the defendant intentionally misapplied money or property; (3) the money or property was under the care, custody or control of the state; (4) the money or property had a value of $5,000 or more; and (5) the state, in a one-year period, received more than $10,000 in federal funds. 18 U.S.C. § 666(a)(1)(A); Fernandez, 282 F.3d at 511.

The defendant assert that Count One of the indictment fails to state an offense under § 666 for the following reasons: (1) the specific actions alleged in the indictment do not constitute "misapplication" of funds; (2) no misapplication can occur when, as a result of [the defendant's] actions, the State of Wisconsin saved money; (3) the defendant's committee had no authority to award a contract and, therefore, she could not have misapplied anything; and

---

[2]Subsection (b) provides:

> The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $ 10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

- 12 -

(4) the use of "political considerations" by a member of the evaluation committee is not unlawful and, therefore, did not result in the misapplication of funds.

Without citation, the defendant asserts that misapplication occurs "when a public employee either obtains illicit person gain, misuses her public office, receives a bribe or fails to disclose a conflict of interest." (Defendant's Second Memorandum at 19). The defendant further asserts that "[n] one of these scenarios are present in this case." Id. The court finds no support for the defendant's assertion that "misapplication" occurs only when a public employee "obtains illicit personal gain," "misuses her public office," "receives a bribe," or "fails to disclose a conflict of interest." Rather, case law supports a conclusion that in order to avoid redundancy, intentional misapplication must mean intentional misapplication for otherwise legitimate purposes. See United States v. Urlacher, 979 F.2d 935, 939 (2nd Cir. 1992).

The defendant asserts that no misapplication occurred because the evaluation committee of which she was a member had no authority to award a contract. However, as previously explained, the evaluation committee not only scores the proposals, but also makes a recommendation based on its scoring. Wis. Admin. Code, Adm § 10.08(4). The eventual contract award "shall be based on the evaluation committee recommendation." Id. at subsection (7). Thus, the evaluation committee all but signs the contract awarded. As the government asserts, the defendant cannot rely on the fact that had the circumstances been different the Department of Administration may not have been bound by the committee's recommendation. Wis. Admin. Code, Adm. § 10.08(7))a)-(e).

- 13 -

The defendant also asserts that no misapplication occurred because the contract went to the lowest bidder. However, it is irrelevant whether the state recognized a benefit. Rather, as the Court of Appeals for the Second Circuit explained:

> Section 666(a)(1)(A) prohibits embezzling, stealing, obtaining by fraud, converting, or intentionally misapplying funds. The first four prohibitions cover any possible taking of money for one's own use or benefit. Intentional misapplication, in order to avoid redundancy, must mean intentional misapplication for otherwise legitimate purposes; if it were for illegitimate purposes, it would be covered by the prohibitions against embezzlement, stealing, obtaining by fraud, or conversion.

Urlacher 979 F.2d at 939; see also, United States v. Cornier-Ortiz, 361 F.3d 29, 37 (1st Cir. 2004) (holding same).

Finally, the defendant asserts that the use of "political considerations" by members of the evaluation committee is not improper and that some "political considerations" must be taken into account during the subjective evaluation process. Specifically, the defendant asserts that the use of "political considerations" in government contracting is neither unheard of nor per se unlawful, citing LaFalce v. Houston, 712 F.2d 292 (7th Cir. 1983).

Whether the use of "political considerations" is per se unlawful is not the issue in this case. Rather, the issue is whether the use of "political considerations" by a member of the evaluation committee can result in the misapplication of funds. Section 10.08(4) of the Wisconsin Administrative Code provides: "An evaluation committee shall [r]eview all proposals submitted in response to an RFP, using as a basis the evaluation criteria included in the RFP." Therefore, the use of criteria not included in the RFP could result in the misapplication of funds.

The indictment alleges that the defendant directed state funds, in excess of $5,000, to Adelman Travel Group by intentionally rigging the bidding process in favor of Adelman Travel Group. Accordingly, considering the indictment as a whole, it sufficiently alleges a violation of

- 14 -

18 U.S.C. §§ 2 and 666(a)(1)(A). Thus, the court will recommend that the defendant's motion to dismiss the indictment be denied.

## MOTION TO DISMISS COUNT TWO

In a separate motion, the defendant seeks dismissal of Count Two of the indictment (Docket #16) because 18 U.S.C. § 1346 allegedly is in irreconcilable conflict and incompatible with Article III, § 3 of the United States Constitution. Specifically, the defendant asserts that 18 U.S.C. § 1346 "is a form of petty treason legislatively contrived in slapdash fashion." (Defendant's Memorandum Supporting Motion to Dismiss Count Two at 15).

Article III of the Constitution provides that "[t]reason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort." U.S. Const., Art. III, § 3, cl. 1. As the government asserts, an examination of the nature and elements of honest services fraud reveals it is a crime that is different from, and lesser than, treason.

Treason, the most serious national crime, is punishable by death or life imprisonment. 18 U.S.C. § 2381; United States v. Rodriguez, 803 F.2d 318, 320 (7th Cir. 1986). On the other hand, honest services fraud is punishable by a maximum of twenty years in prison. 18 U.S.C. § 1341. Treason "can only be committed by someone owing allegiance to the United States and it consists only of levying war against the United States for giving aid and comfort to its enemies." Rodriguez, 803 F.2d at 320. As the court explained in Rodriguez:

> The reason for the restrictive definition is apparent from the historical background of the treason clause. The framers of the Constitution were reluctant to facilitate such prosecutions because they were well aware of abuses, and they themselves were traitors in the eyes of England.

- 15 -

Id. In contrast, the purpose of §1346 distinguishes it from the treason clause. Section 1346 proscribes the misuse of one's office for private gain.

Accordingly, because § 1346 proscribes a different crime and protects a different governmental interest, it does not conflict with the treason clause. See id. Therefore, the court will recommend that the defendant's motion to dismiss Count Two of the indictment be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that Chief United States District Judge Rudolph T. Randa enter an order **denying** defendant Thompson's motion to dismiss the indictment. (Docket #7).

**IT IS FURTHER RECOMMENDED** that Chief United States District Judge Rudolph T. Randa enter an order **denying** defendant Thompson's motion to dismiss Count Two. (Docket #16).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 30th day of May, 2006.

BY THE COURT:
    s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

O:\CRIM\Thompson dismiss rec.wpd